UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

---

| | | |
|---|---|---|
| IN RE: | | |
| ANTHONY J. INZERO, | CASE NO. | 08-30994 (ASD) |
| DEBTOR. | CHAPTER | 7 |
| DIANA G. ADAMS, United States Trustee for Region 2, | | |
| PLAINTIFF, | | |
| vs. | ADV. PRO. NO. | 08-03114 |
| ANTHONY J. INZERO, | | |
| DEFENDANT. | | |

---

APPEARANCES:

Diana G. Adams, Esq.                                    Attorney for Plaintiff
United States Trustee, Region 2
by Holly L. Claiborn, Esq.
Giamo Federal Building
150 Court Street, Room 302
New Haven, Connecticut 06510

Brian E. Kaligian, Esq.                                 Attorney for Debtor-Defendant
203 boston Post Road
Orange, Connecticut 06477

---

**MEMORANDUM OF DECISION ON OBJECTION TO DISCHARGE**

ALBERT S. DABROWSKI, Chief United States Bankruptcy Judge

## I. INTRODUCTION

In this adversary proceeding the United States Trustee (hereafter, the "Trustee") challenges the Debtor's entitlement to a discharge of debts under Chapter 7 of the Bankruptcy Code. The Court, after trial, determines the Debtor-Defendant entitled to his discharge as more fully explained hereafter.

## II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(J).

## III. PROCEDURAL BACKGROUND

On March 31, 2008, the Debtor-Defendant, Anthony J. Inzero (heretofore and hereafter, the "Debtor"), commenced the instant bankruptcy case by the filing of a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. This Court set a deadline of July 7, 2008 (hereafter, the "Deadline"), for the filing of complaints objecting to the Debtor's discharge pursuant to Bankruptcy Code Section 727(a) and/or to determine the dischargeability of debts pursuant to Section 523(a). By Order dated June 19, 2008, this Court extended the Deadline to October 6, 2008, on which date the Trustee timely

commenced the present Adversary Proceeding by the filing of a Complaint (hereafter, the "Complaint"). In the one count Complaint the Trustee alleges that the Debtor has failed to explain satisfactorily, before determination of denial of discharge under 11 U.S.C. § 727, the loss of assets or a deficiency of assets to meet his liabilities, and thus has forfeited his right to obtain a discharge of his debts, pursuant to Section 727(a)(5).

A trial on the Complaint was held on May 4, 2009 (hereafter, the "Trial"), at which the Court received in evidence voluminous documentation offered by the Trustee and heard the testimony of the Debtor and his father, following which the Court considered the arguments of counsel.

## IV. FACTUAL BACKGROUND

With very limited exception, the facts alleged in the Compliant are undisputed. Among the few disputed facts are paragraphs 52, 54 and 55 of the Complaint which allege certain casino gambling records reflect relatively minimal net gambling loses of $1560.00 incurred by the Debtor during the applicable time frame. The Debtor disputes the allegations in these paragraphs only to the extent the Trustee alleges that these records represent the totality of the Debtor's net gambling losses.[1]

In summary, the Trustee alleged in the Complaint, and established at Trial, that the Debtor, on Schedule F, listed general unsecured debt of $267,916.33. Of that amount the Debtor owes the sum of $206,815.00 on seven credit cards. Included on Schedule F is

---

[1] Exhibit One (re the Foxwoods Resort and Casino for the year 2007), Exhibit Two (re the Mohegan Sun for the year 2007), and Exhibit Three (re the Mohegan Sun for the period January-August, 2008) reflect a total net "loss" associated with the Debtor's respective "Dream/Club" cards of $1560.00. These Exhibits do not purport to reflect a summary of all gaming activity (*e.g.*, ""[I]n instances where you did not use your Players Club Card, we are unable to account for your gaming activity." Exhibit Two).

3

$158,799.00 owed on an American Express Credit Card (hereafter, the "AMEX Card"). More specifically, the Trustee established that during the period between February 2007 and March 2008, the Debtor, (i) through the use of his AMEX card at his family's flower shop,[2] and at a family friend's gas station,[3] obtained cash in the aggregate amount of $631,769.98, (ii) made payments on the AMEX Card of approximately $525,528.48, (iii) resulting in an unexplained deficiency on that card for that period of approximately $106,268.50.  It is undisputed, and the evidence reflects, that a part of the Debtor's total unsecured debt of $206,815.00, including a significant component of the $158,799.00 owed on the AMEX Card, was incurred by the Debtor's use of those cards to obtain cash. The Debtor testified that the cash so obtained was lost by him at the black jack tables of the Foxwoods Resort and Mohegan Sun Casinos.  The Trustee, relying, *inter alia*, on the above referenced casino records, reflecting net losses limited to $1,560.00, asserts that the Debtor's explanation is both incredible and uncorroborated by documentation.

## V. DISCUSSION

In appreciation of the fact that a denial of a debtor's discharge "imposes an extreme penalty for wrongdoing," the United States Court of Appeals for the Second Circuit, in <u>In re Chalasani</u>, 92 F.3d 1300 (2d Cir. 1996), instructed that Section 727 "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the

---

[2] Credit card statements for the AMEX Card reflect 123 transactions totaling approximately $263,000.00 at Tony & Betty's Florist (the Debtor's family's flower shop) between February 2007 and March 2008.

[3] Credit card statements for the AMEX Card reflect 915 transactions totaling approximately $381,000.00 at Cobb's Mobil (the Debtor's friend's gas station) between January 2007 and March 2008.

4

bankrupt.'" Id. at 1310.  Nevertheless, the relief of a bankruptcy discharge is not an absolute right, but rather a privilege accorded honest debtors who provide honest and ample disclosure to parties in interest and otherwise satisfy bankruptcy's statutory obligations.

The Trustee seeks to deny the Debtor his discharge pursuant to 11 U.S.C. § 727(a)(5) upon a claim that the Debtor has failed to satisfactorily explain, before determination of the denial of his discharge, a loss of assets or deficiency of assets.

Section 727(a)(5) provides:

> (a)   The court shall grant the debtor a discharge, unless—
> . . .
> (5)   the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5).

In order to prevail in having a debtor's discharge denied for failure to explain satisfactorily a loss or deficiency of assets, a plaintiff must meet an initial burden of producing some credible evidence of the requisite loss or deficiency. See 6 Lawrence P. King, ed. Collier on Bankruptcy ¶ 727.08, p. 727-47 (15th ed. rev. 1998). In this proceeding, it is uncontested, and could not reasonably be contested, that the Trustee has met this burden. Once a plaintiff has established a deficiency of substantial assets, the burden of production shifts to the debtor to satisfactorily explain the loss or deficiency. D.A.N. Joint Venture v. Cacioli (In re Cacioli), 463 F.3d 229 (2d Cir. 2006), citing Caolo v. McGovern (In re McGovern), 215 B.R. 304, 307 (Bankr. D. Conn. 1997).  The burden

5

of proof, however, remains at all times with the plaintiff. Fed. R. Bankr. P. 4005 ("At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection.")

At the conclusion of the Trial, the Trustee made two arguments. First, the Trustee argued that, on the basis of case law, the Debtor's testimony concerning his gambling losses must, as a matter of law, be corroborated by documentary evidence. Secondly, the Trustee argued that, as a matter of fact, the Debtor has failed to explain satisfactorily the loss of more than $100,000.00 of assets.

### A.   To be determined satisfactory, a debtor's explanations need not be corroborated by documentary evidence in all instances.

The Trustee, citing, *inter alia*, Roberts v. Debusk (In re Debusk), 2008 WL 3904448 (Bankr. E.D. Tenn. 2008), argues that to be "satisfactory" a debtor's asset deficiency explanation "must be supported by 'at least some documentation,'" id. at *8 (citing Stathopoulos v. Bostrom (In re Bostrom), 286 B.R. 352, 364-65 (Bankr.N.D.Ill.2002) (quoting Banner Oil Co. v. Bryson (In re Bryson), 187 B.R. 939, 956 (Bankr.N.D.Ill.1995))). This Court generally agrees with this proposition, but declines to apply it in all instances, and in this instance, for the several reasons which follow.

First, in Debusk, Bostrom and Bryson, the stated purpose of the supporting document requisite was "to free the Court from the need to speculate about the veracity of the debtor's explanations." In re Bryson, 187 B.R. at 956 (citing Bay State Milling Co. v. Martin (In re Martin), 145 B.R. 933, 950 (Bankr.N.D.Ill.1992)). After hearing the Debtor's testimony, and the consistent testimony of his father, this Court did not find itself

"speculating" about the Debtor's, or his father's, veracity. Rather, having carefully observed the witnesses' demeanor and conduct under oath, the Court was left with a firm conviction that both were telling the truth.

The Court also notes that neither Section 727(a)(5), the applicable statute, nor Fed. R. Bankr. P. 4005, the applicable rule, requires corroborating documentary evidence. Moreover, in a decision this Court considers dispositive of the issue of whether the Debtor is required, as a matter of *law*, to produce documentary evidence to corroborate his explanation of the loss of assets, the Second Circuit has held:

> In order to obtain a denial of discharge under § 727(a)(5), first, the creditor must establish a loss or deficiency of assets. If the creditor makes such a showing, the debtor has an opportunity to explain the whereabouts of the assets. As long as the debtor's explanation is convincing and not rebutted, there is *no need for documentary corroboration*. See Krohn v. Cromer (In re Cromer), 214 B.R. 86, 97 (Bankr.E.D.N.Y.1997) (stating that "as long as debtor's explanation convinces the judge that the debtor has not hidden or shielded assets, *corroborating evidence by way of documentation is not necessary in every instance*").

In re Cacioli, 463 F.3d at 238-39 (some citations omitted; emphasis added).

The Court thus concludes that it need not require, as a matter of law, that the Debtor corroborate with documentary evidence his explanation of the loss of assets.[4]

---

[4] Having found the Debtor's testimony to be highly credible and convincing, *see* Part V. Section B, *infra*, and that he did not often use his "Dream/Club" cards, and noting that casino records do not account for gaming activity where the player does not use his card(s), see fn. 1, infra, the Court finds that the Trustee did not rebut the Debtor's testimony that his losses significantly exceeded the amount shown on those records. In addition, while the Court determines herein that documentary corroboration supporting an explanation for a loss or deficiency of assets is not an absolute requisite in all instances, including the present matter, the AMEX Card records themselves, relied on by the Trustee to establish the "deficiency", at the same time appear to corroborate the explanation. Monthly charges to obtain cash at a family business and friend's gas station, and related payments, totaling $631,769.98 and $525,528.48, respectively, during a thirteen month period, are entirely consistent with, and corroborative of, a serious and substantial gambling or other addiction. In the present matter, there is no evidence to suggest the debtor suffered from any addiction other than gambling.

**B.     *The Debtor has explained satisfactorily the deficiency of assets in this case*.**

Having concluded that a debtor is not required to produce documentary evidence to corroborate his testimony, the Court must determine whether, under the particular circumstances of this proceeding, the Debtor has, as a matter of fact, "failed to explain satisfactorily" a loss or deficiency of assets in accordance with §727(a)(5).

At the Trial, the Court received in evidence, without objection, voluminous documentary exhibits supporting the largely undisputed allegations in the Complaint, and clearly reflecting a deficiency of assets to meet the Debtor's liabilities well exceeding $100,000.00 (hereafter, the "Deficiency"). On the critical issue – the Debtor's burden to "explain satisfactorily" the Deficiency – the Court heard the testimony of the Debtor, corroborated in certain respects by the testimony of his father. The Court found the testimony of both to be concise, consistent, non-evasive, highly credible, and convincing. *Inter alia*, the Debtor credibly explained the limited casino records (reflecting limited net losses), and the absence of records reflecting his use of credit cards to obtain cash *at the Casinos,* through his testimony that he was then seeking to hide his gambling addiction from his wife and family, including his father. The Court found credible his explanation that he did not use his casino cards, and did not use his credit cards at the casinos, for to do so would increase the risk that his wife, and other family members would discover his addiction and ever growing losses. The Debtor's father's testimony was also credible and consistent with that of the Debtor – he first confirmed his son's gambling problem only after approaching him on the suspicion that the son may have been gambling, and then foolishly accompanied his son back to the casinos to attempt to "win back" some of the losses. The

8

Court also notes that the Debtor and his father appear to have a close relationship, and that the father's home is in foreclosure. Were the Debtor hiding large cash assets, common sense suggests it unlikely that mortgage payments on his father's home would be in default.

The Debtor's testimony, corroborated in part by his father, that he lost as much as several hundred thousand dollars at the black jack tables of Connecticut's two gambling casinos, explains satisfactorily the substantial Deficiency in this case, notwithstanding an absence of corroborating *documentary* evidence.

> The word 'satisfactorily'. . . may mean reasonable, or it may mean that the court, after having heard the excuse, the explanation, has that mental attitude which finds contentment in saying that he believes the explanation – he believes what the bankrupts say with reference to the disappearance or the shortage. He is satisfied. He no longer wonders. He is contented.

In re Shapiro & Ornish, 37 F.2d 403, 406 (N.D. Tex. 1929), aff'd 37 F.2d 407 (5th Cir. 1930).

Although corroborating documentary evidence may, under certain circumstances, be helpful or persuasive, its absence is not dispositive where, as in the present matter, the undersigned judge, after hearing the Debtor's testimony alone, believed the explanation, was completely satisfied, did not wonder, and was contented with a decision that the Debtor had testified truthfully.[5] That determination turned out to be supported by the

---

[5] During the last forty years, first as a federal prosecutor and for the last sixteen years as a judge, the undersigned judge has at least some experience in judging credibility. And, while this Court would never be so bold as to assume that its credibility determinations were impervious to error, in this particular case the Court is confident of its credibility determination.

credible testimony of a second witness, *albeit* the Debtor's father.[6]

In addition, there may be instances, and this is one, where documentation is not to be reasonably expected. Absent the Debtor's more frequent use of his casino cards, or his use of other cards at the casino, no helpful records would exist. And while the Debtor admits he failed to create, or take action which would have created corroborative records through using his cards at the casinos, reference to the question of what constitutes justification for a failure to maintain records under Section 727(a)(3), even though not directly in play in this matter, is illustrative.

The question, in a Section 727(a)(3) scenario, of the Debtor's failure to keep or maintain records is subject to explanation.

Section 727(a)(3) provides in full as follows:

(a) The court shall grant the debtor a discharge, unless—
  (3)   the debtor has concealed, destroyed, mutilated, falsified, or *failed to keep* or preserve any *recorded information*, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, *unless such act or failure to act was justified under all of the circumstances of the case;*

11 U.S.C. § 727(a)(3)(2005) (emphasis added)..

Section 727(a)(3) does not specify what constitutes justification for poor record-keeping. Rather, that element was left undefined by the statute, requiring the court to make a determination based upon all the circumstances of the case. See e.g., In re Halperin, 387 F.2d 312, 314 (2d Cir. 1968) ("What constitutes adequate record keeping,

---

[6] While not the Court finds the Debtor's explanation to be satisfactory without consideration of any "supporting documentation", there appears to be such support in the AMEX Card records. *See* fn. 4, *supra*.

10

is a question in each instance of the reasonableness in the particular circumstances" (internal quotations omitted)).

More recently, a panel of the Court of Appeals for the Second Circuit, in a Section 727(a)(3) analysis, further opined:

> whether a debtor's failure to keep books is justified is "a question in each instance of reasonableness in the particular circumstances." Underhill, 82 F.2d at 259—60; see also, Meridian Bank, 958 F.2d at 1231 (stating that "[t]he issue of justification depends largely on what a normal, reasonable person would do under similar circumstances"). It is a "loose test, concerned with the practical problems of what can be expected of the type of person and type of business involved." Morris Plan Indus. Bank of N.Y. v. Dreher, 144 F.2d 60, 61 (2d Cir. 1944).

In re Cacioli, 463 F.3d at 235.

Applying the standards for a Section 727(a)(3) justification determination as set forth in State Bank of India v. Sethi (In re Sethi), 250 B.R. 831, 838 (Bankr. E.D.N.Y 2000)[7], is helpful. The Debtor was not engaged in a business - he was an addicted gambler operating at the time with the fear that his family, and particularly his wife, would discover his addiction. Any customary business practices for record keeping in connection with a professional gambler, who might be expected to maintain records *(inter alia,* to

---

[7]In Sethi, the Court listed the following circumstances, *inter alia* –
1.  whether the debtor is engaged in business, and if so, the complexity and volume of the business;
2.  the amount of the debtor's obligations;
3.  whether the debtor's failure to keep or preserve records was due to the debtor's fault;
4.  the debtor's education, business experience and sophistication;
5.  the customary business practices for record keeping in the debtor's type of business;
6.  the degree of accuracy disclosed by the debtor's existing books and records;
7.  the extent of any egregious conduct on the debtor's part; and
8.  the debtor's courtroom demeanor.

11

offset losses against winnings for tax purposes), are not relevant.[8] The amount of the Debtor's losses was ever growing, thereby increasing his fear of discovery. The Debtor's courtroom demeanor was honest, frank, and highly credible.

The Debtor's explanation for not undertaking activity which would have resulted in more detailed records, like his broader explanation of the Deficiency, was fully satisfactory. Not using credit cards at the casino is what a normal, reasonable person would do under the circumstances the Debtor found himself to be in. And, as previously mentioned, there is no other reason to believe relevant records would exist.

The Court finds, as a matter of fact, that the Debtor has provided a satisfactory explanation of the Deficiency.

## VI. CONCLUSION

The Court, having now considered all the evidence presented at the Trial, having received and considered the parties' respective arguments, and in view of, *inter alia*, the aforementioned credible testimony of the Debtor, corroborated by the credible testimony of his father, and having determined that the Debtor has explained satisfactorily the deficiency of assets to meet his liabilities, and is entitled to his discharge, shall enter a separate Judgment in favor of the Debtor simultaneously herewith.

Dated: October 20, 2009                                    BY THE COURT

*Albert S. Dabrowski*
Chief United States Bankruptcy Judge

---

[8] The Court obviously draws a clear distinction between an addicted gambler and a professional gambler.